IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| Life Care Centers of America, Inc., San Gabriel Medical Investors LLC, Arapahoe Medical Investors, LLC, Lee County Medical Investors, LLC, Gwinnett Operations, LLC, Bridgeview Medical Investors, LLC, Mitchell Medical Investors, LLC, Wichita Medical Investors, LLC, New Bedford Medical Investors, LLC, Cape Girardeau Operations, LLC, Farmington Operations, LLC, Las Vegas Operations, LLC, Haltom Medical Investors, LLC, Bountiful Medical Investors, LLC, Life Care Associates, LLC, Cheyenne Operations, LLC, et al., <br><br>    Plaintiffs, <br><br>v. <br><br>Omnicare, Inc., <br><br>    Defendants. | Civil Action No. 1:06-CV-177 |

DECLARATION OF LUCIAN T. PERA

LUCIAN T. PERA states and declares as follows:

## QUALIFICATIONS

1. I am an attorney licensed to practice and practicing law in Tennessee. I was first licensed in Tennessee in 1985 and have been continuously licensed since that time. I am a partner in the law firm of Adams and Reese LLP, resident in the firm's Memphis office, and I have been a partner in the firm since May 1, 2006. From September 1986 through April 30, 2006, I practiced law with Armstrong Allen, PLLC, and was a partner or member of that firm from January 1994 through April 2006. From 1985 through 1986, I served as a law clerk to



EXHIBIT 4

Judge Harry W. Wellford of the United States Court of Appeals for the Sixth Circuit. A copy of my current curriculum vitae is attached as Exhibit A.

2. For many years, I have devoted significant time and attention to the study of matters relating to legal ethics, professional responsibility, legal malpractice, loss prevention, and related topics concerning the practice of law. Since before 1990, I have counseled lawyers associated with my law firm about such matters and, in more recent years, I have represented and counseled lawyers, law firms, and their clients about such matters as a part of my practice.

3. I also teach and write on these subjects. Most of the seminars that I have done over the last few years, as well as most of the articles that I have authored or contributed to, are listed on the attached curriculum vitae.

4. I have served on several bar association committees whose work related to these subjects. Among the bar association committees on which I have served is the Tennessee Bar Association Standing Committee on Ethics and Professional Responsibility (formerly known as the Committee for the Study of Standards of Professional Conduct), of which I served as Vice Chair from 1995 until 2000, and as Chair since that time. For five years, this Committee worked to develop a draft set of new lawyer ethics rules for Tennessee and, based on this work, in October 2000 the TBA filed a petition asking the Supreme Court of Tennessee to adopt these draft ethics rules. In August 2002, the Tennessee Supreme Court granted the TBA's petition and adopted these proposed ethics rules, effective March 1, 2003. We are presently studying the ABA's recent revisions to the ABA Model Rules of Professional Conduct for possible adoption in Tennessee.

5. From 1997 through 2002, I served on the thirteen-person American Bar Association Special Commission on the Evaluation of the Rules of Professional Conduct (also

known as the "Ethics 2000 Commission"), which was charged with reviewing the ABA Model Rules of Professional Conduct and submitting a report to the ABA House of Delegates concerning any recommended changes in them. After two sessions of debate, the ABA House of Delegates approved most of Ethics 2000's recommended changes in the ABA Model Rules of Professional Conduct at its meeting in February 2002.

6. From 2000 through 2002, I served as liaison from the Ethics 2000 Commission to the ABA Special Commission on Multijurisdictional Practice (the "MJP Commission"). I participated in the deliberations of this Commission and assisted in guiding its proposal through debate in the ABA House of Delegates in August 2002. The ABA House of Delegates approved most of the MJP Commission's recommendations at its meeting in August 2002.

7. Currently, I also serve as chair of the Committee on Professional Conduct of the ABA Section of Business Law and as chair of the Ethics Committee of the Media Law Resource Center's Defense Counsel Section.

8. I am familiar with the rules of ethics and other law related to the practice of law in Tennessee and the fiduciary duties that Tennessee lawyers owe their clients.

## INFORMATION CONSIDERED

9. I have been asked by counsel for defendant Omnicare, Inc. ("Omnicare") to review certain documents and information concerning an allegation by plaintiffs in this action that the representation of Omnicare by one set of Chambliss Bahner lawyers and the simultaneous representation of Tony Oglesby and Kevin Seramur as defendants in another lawsuit brought by one of the plaintiffs gives rise to a conflict of interest requiring Chambliss Bahner's disqualification.

10. The documents that I have been provided or reviewed concerning this matter include the following:

a. Plaintiff's Motion to Disqualify (including exhibits; filed Jan. 26, 2007).

b. Memorandum of Law in Support of Plaintiffs' Motion to Disqualify.

c. T. Maxfield Bahner letter to Sam D. Elliott, dated December 22, 2006.

d. T. Maxfield Bahner letter to Richard W. Reinthaler, dated October 30, 2006.

e. Chambliss Bahner internal memorandum dated December 20, 2006, concerning ethical wall.

f. Affidavit of T. Maxfield Bahner (dated Feb. 6, 2007).

g. Plaintiffs' Motion to Disqualify and related documents filed in *Life Care Centers of America, Inc. v. SavaSeniorCare, LLC*, Circuit Court of Bradley County, Tennessee, Case No. V-06-613.

h. Various correspondence with Chambliss Bahner attorneys.

I have also discussed the underlying facts of this case with Chambliss Bahner lawyers. Based on this information and my review of certain legal authorities, I have formed certain opinions and conclusions about this matter.

11. The essential facts on which I have relied to form my opinions and conclusions in this matter are the following:

a. Lawyers associated with Chambliss Bahner represent Omnicare, Inc. ("Omnicare"), the defendant in this action. This action was filed by plaintiff Life Care Centers of America, Inc. ("Life Care") and related entities on August 14, 2006.

b. Omnicare is also represented in this action by lawyers associated with Dewey Ballantine LLP ("Dewey Ballantine"). These lawyers are lead counsel for Omnicare in this action.

c. Lawyers associated with Chambliss Bahner represent the defendants in *Life Care Centers of America, Inc. v. SavaSeniorCare, LLC*, which is pending in the Circuit Court of Bradley County, Tennessee, under Case No. V-06-613 ("*Life Care v. SavaSeniorCare* Lawsuit"). These defendants include Tony Oglesby and Kevin

193017-1

Seramur, two former employees of Life Care. The *Life Care v. SavaSeniorCare* Lawsuit was filed by Life Care and other related entities on July 31, 2006.

d. The Chambliss Bahner lawyers who represent Omnicare in this action have performed no work on the *Life Care v. SavaSeniorCare* Lawsuit and have received no confidential information concerning the *Life Care v. SavaSeniorCare* Lawsuit. The same is true of other Chambliss Bahner personnel who have worked on this action.

e. The Chambliss Bahner lawyers who represent the defendants in the *Life Care v. SavaSeniorCare* Lawsuit have performed no work for Omnicare concerning this action and have received no confidential information concerning this action. The same is true of other Chambliss Bahner personnel who have worked on the *Life Care v. SavaSeniorCare* Lawsuit.

f. Plaintiff Life Care asserts that Tony Oglesby and Kevin Seramur are or will be fact witnesses in this action. Specifically, these individuals apparently have knowledge concerning an audit conducted by Life Care that Life Care asserts is pertinent to its claim that Omnicare overpriced certain prescription drugs, and concerning communications with Omnicare concerning this audit. Life Care asserts that evidence concerning this audit is essential to the pursuit of its claims against Omnicare.

g. The Chambliss Bahner lawyers who represent Omnicare in this action have arranged, after discussions with their client Omnicare and their lead counsel in this action at Dewey Ballantine, for lawyers with Dewey Ballantine to exclusively handle aspects of the representation of Omnicare in this action that directly involve Tony Oglesby and Kevin Seramur. Thus, lawyers associated with Dewey Ballantine would be solely responsible for examining or cross-examining Tony Oglesby and Kevin Seramur, whether in deposition or at any hearing or trial, and lawyers with Chambliss Bahner would not be involved in these aspects of the representation of Omnicare in this action.

## OPINIONS AND CONCLUSIONS

12. Plaintiff Life Care has asserted in its motion to disqualify Chambliss Bahner that the firm should be disqualified from representing defendant Omnicare in this action due to the fact that Chambliss Bahner lawyers not involved in this action represent Tony Oglesby and Kevin Seramur in the *Life Care v. SavaSeniorCare* Lawsuit.[1] In its motion to disqualify, Life Care asserts that Chambliss Bahner's loyalty to its clients Tony Oglesby and Kevin Seramur

---
[1] Plaintiff Life Care has contemporaneously filed a motion to disqualify Chambliss Bahner from its representation of the defendants in the *Life Care v. SavaSeniorCare* Lawsuit.

193017-1

creates a non-consentable conflict of interest under Tennessee Rule of Professional Conduct 1.7(b). In my opinion, Life Care's assertion is without merit.

13. In my opinion, attorneys for Life Care correctly turn for guidance on this question to ABA Formal Opinion 92-367, entitled, "Lawyer Examining a Client as an Adverse Witness, or Conducting Third Party Discovery of the Client." In general, because this ABA opinion is based on a version of ABA Model Rule of Professional Conduct 1.7(b) that is largely the same as Tennessee Rule of Professional Conduct 1.7(b), it provides helpful guidance on this subject.

14. Following the analysis of ABA Formal Opinion 92-367, I agree that Chambliss Bahner may[2] have a conflict of interest arising from its concurrent representation of Omnicare and two likely witnesses in this action, Tony Oglesby and Kevin Seramur. Notwithstanding any such conflict of interest, Omnicare and its counsel have, in my opinion, addressed this conflict of interest by agreeing that only lawyers associated with Dewey Ballantine will examine or cross-examine Oglesby and Seramur, and agreeing that lawyers with Chambliss Bahner will take no part in any such examination or cross-examination.[3] This solution is expressly mentioned and approved in ABA Formal Opinion 92-367 and has been used by many courts as a means to avoid the disqualification of a party's chosen counsel.

---

[2] I am not convinced that a conflict of interest has been shown to exist because it is not clear to me precisely what sort of testimony Tony Oglesby and Kevin Seramur might offer in this action. ABA Formal Opinion 92-367 makes clear, in the section of the opinion headed, "Degree of Adverseness," that not all such circumstances do, in fact, give rise to a conflict of interest. In some factual circumstances, for example, such as where a lawyer might be called upon to aggressively cross-examine a witness closely aligned with his opponent, where that witness is also a client of the examining lawyer on other matters, the existence of a conflict of interest under Rule 1.7 is clear. In other factual circumstances, however, such as where a client-witness is a neutral witness, offering uncontradicted testimony, no conflict might exist. In my opinion, however, it is not necessary to reach this question, given the fact that Chambliss Bahner attorneys and their client Omnicare have agreed that only Dewey Ballantine lawyers will examine or cross-examine Oglesby and Seramur.

[3] At several points in their Memorandum in Support of Plaintiffs' Motion to Disqualify, Life Care asserts that Omnicare's "general counsel" is expected to take over the examination or cross-examination of Oglesby and Seramur from Chambliss Bahner. This is obviously incorrect.

193017-1

15. Specifically, the last paragraph of ABA Formal Opinion 92-367 addresses this solution and blesses this approach as a technique to appropriately address this type of conflict of interest and avoid disqualification:

> *Declining or Withdrawing from Representation*
> Where one of the two representations is prospective only, and conflict is clearly foreseeable, then the solution, absent client consent, is clear enough: the prospective engagement must be declined. The solution may not be so simple, however, in a case where the conflict arises, or becomes foreseeable, only after both representations are well under way. Withdrawal from representation is an obvious possibility; but the harder question is, from which representation? Priority in time of the commencement of the representation is ordinarily likely to be given primary weight, yet the balance of equities, in terms of prejudice resulting from withdrawal, may well tilt strongly the other way. There are possible circumstances, for example, where it would be particularly unfair to the litigation client to require it to choose between foregoing cross-examination of an important adverse witness, or discovery of an important third party witness, on the one hand, and replacing trial counsel after the litigation is long under way, on the other. <u>In such circumstances, the desirability of some practical solution to the problem of the lawyer's (and the lawyer's colleagues') conflicting loyalties, and the more fundamental problem of the conflicting interests of the two clients involved, is patent. In some instances, a sufficient solution may be to provide for other counsel, also representing the litigation counsel, to deal with the client-witness</u>: where local counsel as well as principal counsel are involved in a litigation, the disqualification applying to one of these will not ordinarily affect the other.[17] In other circumstances, a satisfactory solution may be the retention of another lawyer solely for the purpose of examining the principal lawyer's client.[18]

---

[17] The general rule is that a co-counsel relationship will not in and of itself require disqualification. *See Akerly v. Red Barn System, Inc.*, 551 F.2d 539 (3d Cir. 1977) (refusing to disqualify main counsel following the disqualification of his local counsel); *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1971) (reversing trial court order imputing local counsel's disqualification to a co-counsel firm serving as trial counsel).

[18] This is a possibility suggested in *Jeffers*, 520 F.2d at 1266.[4]

16. Following this analysis, in my opinion, in this case, the "balance of equities" weighs heavily in favor of not disqualifying Chambliss Bahner from its representation of Omnicare in this action. Among the factors I have considered in reaching this conclusion are the following:

---

[4] *United States v. Jeffers*, 520 F.2d 1256 (7th Cir. 1975) (Stevens, J.), *cert. denied*, 423 U.S. 1066 (1976).

193017-1

a. Based on the facts as I understand them, the potential for such a conflict of interest was not foreseeable (and certainly not, in the words of the ABA opinion, "clearly foreseeable") by Omnicare or Chambliss Bahner prior to the commencement of Chambliss Bahner's representation.[5]

b. Omnicare desires for Chambliss Bahner lawyers to continue as its counsel in this case, and its choice of counsel should weigh heavily in the balance in opposition to disqualification.

c. As discussed below, Chambliss Bahner lawyers have acted promptly and responsibly to confirm that no confidential information from Tony Oglesby and Kevin Seramur has been or might be shared with Chambliss Bahner lawyers representing Omnicare in this action.

d. Any conflict of interest presented on these facts is clearly consentable under Tennessee Rule 1.7(b), and the various affected clients of Chambliss Bahner have, in fact, consented to waive any such conflict of interest.

17. The assertion by Life Care that any conflict of interest present here is not one that may be consented to by Chambliss Bahner's affected clients is, in my opinion, clearly wrong. Rule 1.7(b) clearly sets out the standard measuring those conflicts of interest that may be consented to:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents in writing after consultation.

Tenn. R. Sup. Ct. 8, RPC 1.7(b). In my opinion, based on the facts presented here, including an agreement among Omnicare, and the Chambliss Bahner and Dewey Ballantine lawyers

---

[5] The same cannot be said of Life Care.

Assuming the truth of Life Care's assertions that Tony Oglesby and Kevin Seramur are likely to be important witnesses on its behalf in this action, it is hard to understand how this would not have been clearly foreseeable at or before the time this action was filed. Oglesby and Seramur were, of course, its own former employees and Life Care chose to sue them individually in the *Life Care v. SavaSeniorCare* Lawsuit approximately two weeks before it filed this action.

Indeed, the fact that Life Care was in possession of these facts, yet did not seek Chambliss Bahner's disqualification for more than five months appears to raise some question of whether Life Care may have waived this issue. *See, e.g., Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.,* 813 S.W.2d 400, 411 (Tenn. 1991); *Seibers v. Pepsi-Cola Bottling Co.,* 2000 Tenn. App. LEXIS 818 (Tenn. Ct. App. 2000).

193017-1

representing Omnicare, that only Dewey Ballantine lawyers will handle the examination or cross-examination of Tony Oglesby and Kevin Seramur, a reasonable lawyer, in the position of the Chambliss Bahner lawyers representing Omnicare, could reasonably believe that their representation of Omnicare will not be adversely affected.

18. In my opinion, based on my understanding of the facts, Chambliss Bahner lawyers have responsibly addressed issues of possible confidential information in the possession of their clients Tony Oglesby and Kevin Seramur that might be pertinent to this action by the establishment of an "ethical wall." It is not at all clear from the facts of this matter that Oglesby or Seramur possess any information that is both pertinent to this action and not discoverable. The only area of confidential information identified by Life Care in its motion to disqualify concerns an audit performed by Life Care. If, as Life Care asserts, it is essential to their ability to prove its case against Omnicare that Life Care use the audit of which Oglesby and Seramur apparently have knowledge, it is not at all clear to me why matters within their knowledge concerning the audit would not be discoverable in this action. Regardless, Chambliss Bahner has established an ethical wall to preclude the sharing of any potentially confidential information.

19. Based on my review of the facts, in my opinion, the methods by which Chambliss Bahner has established an ethical wall to protect against the sharing of any possibly confidential information are appropriate, adequate, and consistent with good practice in such matters.

20. While Life Care correctly states in its motion to disqualify that this use of an ethical wall is not expressly sanctioned by the language of Tennessee Rule of Professional Conduct 1.10, that is simply not the point. In fact, the purpose of this ethical wall is to alleviate any concern that the Court or Life Care might legitimately and reasonably have concerning the sharing of any possibly confidential information. Notwithstanding the inapplicability of Rule

193017-1

1.10(c), courts have frequently relied on the existence of ethical walls as one basis for declining to disqualify counsel, and parties have similarly relied upon such procedures and commitments by their and other parties' counsel as a basis for their waiver of a conflict of interest. The suggestion that the language of Rule 1.10(c) somehow *precludes* this use of ethical walls for other purposes, as Life Care seems to suggest, is simply misguided and unsupported in law.

21. In my opinion, the most closely applicable authority on the issues presented in Life Care's motion to disqualify Chambliss Bahner is *Sykes v. Matter*, 316 F. Supp. 2d 630 (M.D. Tenn. 2004). While Life Care attempts to use this authority to support the disqualification of Chambliss Bahner, in my view, a thoughtful analysis of the balance of equities demonstrates that *Sykes* strongly supports denial of Life Care's motion. In *Sykes*, challenged counsel's possession of confidential information was clear; further, challenged counsel had asserted that the confidential information possessed was the type of adverse information concerning the witness that might be used to discredit him. Further, of course, *Sykes* expressly blessed the use of other counsel to examine or cross-examine the client-witness as a means to help avoid disqualification.

22. In my opinion, based on my review of the facts of this matter and the applicable law, Chambliss Bahner lawyers have acted responsibly and professionally in response to Life Care's allegation that the representation of Omnicare by one set of lawyers associated with the firm and the simultaneous representation of Tony Oglesby and Kevin Seramur in the *Life Care v. SavaSeniorCare* Lawsuit gives rise to a conflict of interest requiring the firm's disqualification. Also, in my opinion, Chambliss Bahner lawyers have acted in compliance with their duties under the applicable Tennessee Rules of Professional Conduct and their fiduciary duties to their

193017-1

various clients in this matter. Further, in my opinion, an analysis of the balance of equities in this matter strongly favors denial of the motion to disqualify Chambliss Bahner.

23. I declare under penalty of perjury that the foregoing declaration is true to the best of my knowledge, information, and belief.

_____
LUCIAN T. PERA

Date: 2-7-07

193017_1.DOC

193017-1

## CERTIFICATE OF SERVICE

I certify that the following individuals have been served a copy of the foregoing document via the electronic filing system:

selliott@gplce.com
cgearhiser@gplce.com
Mr. Sam D. Elliott
Mr. Charles J. Gearhiser
Gearhiser, Peters, Lockaby, Cavett & Elliott, PLLC
320 McCallie Avenue
Chattanooga, Tennessee 37402

This 9th day of February, 2007.

Anthony A. Jackson

193017-1